IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DENITA ADAMS-GILLARD, KATHRYN HAMANN, AND JAY SYCKS, individually and on behalf of all others similarly situated, | |
| | No. 2:21-cv-02038-SHM-cgc |
| Plaintiffs, | |
| v. | JURY DEMAND |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., a Tennessee for Profit Corporation, | |
| Defendant. | |

ORDER DENYING INTERVENTION

This is a putative class action. Named Plaintiffs Denita Adams-Gillard ("Adams-Gillard") and Jay Sycks ("Sycks") assert claims for unpaid overtime against their employer, Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick"). [1] Shondra Siler ("Siler"), another Sedgwick employee, filed an initial motion to intervene on November 26, 2021. (D.E. 62.) ("Initial Motion to Intervene"). Siler filed a corrected motion to intervene on November 29, 2021. (D.E. 66.) ("Corrected Motion to Intervene"). Named Plaintiffs and Sedgwick filed

---

[1] Named Plaintiff Kathryn Hamann has been dismissed from the action. (D.E. 56.)

responses in opposition. (D.E. 67; 81; 82.) Siler filed a reply. (D.E. 85.) The Initial Motion to Intervene and the Corrected Motion to Intervene are DENIED.

## I.  Background

The Motions to Intervene address the unpaid overtime claims of certain Sedgwick Disability Representative Senior ("DRS") employees based in Illinois. Siler, Named Plaintiffs, and Sedgwick dispute how and where those claims should be resolved. There are three relevant cases: 1) Easterwood v. Sedgwick Claims Management Services, Inc., 6:19-cv-700-Orl-78LRH (M.D. Fla.) ("Easterwood Action"); 2) Walker v. Sedgwick Claims Management Services, Inc., 1:19-cv-07482 (N.D. Ill.) ("Walker Action"); and 3) Adams-Gillard v. Sedgwick Claims Management Services, Inc., 2:21-cv-02038-SHM-cgc (W.D. Tenn.) ("Adams-Gillard Action"), the present case.

In the Easterwood Action, Sedgwick employees asserted unpaid overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. The court in the Easterwood Action certified an opt-in collective that covered Sedgwick DRS employees whose job was to process disability claims ("DRS-Disability Employees"). (Easterwood, D.E. 128.) Of approximately 137 Illinois DRS-Disability Employees, 20 exercised their opt-in right and resolved their FLSA claims. (See Adams-Gillard, D.E. 70, PAGEID 396.) Adams-Gillard was

among the Illinois DRS-Disability Employees who opted in to the FLSA collective. (See Easterwood, D.E. 193.)

In the Walker Action, Sedgwick employees asserted unpaid overtime claims under the FLSA, the Illinois Minimum Wage Law, 80 ILCS §§ 105/1, et seq., and the Chicago Minimum Wage Ordinance, § 1-24-10 of the Municipal Code of Chicago. (Walker, D.E. 1.) An initial complaint was filed on November 12, 2019. (Walker, D.E. 1.) The initial complaint names Janet Walker ("Walker") and Kimberly Harris ("Harris") as representative plaintiffs. Walker and Harris sought to represent approximately 40 Sedgwick DRS employees whose job was to process ADA accommodation requests at Sedgwick's Chicago locations ("DRS-Accommodation Employees"). (Adams-Gillard, D.E. 70, PAGEID 396-97). An amended complaint was filed on April 19, 2021. (Walker, D.E. 38.) It added Siler as a representative plaintiff. Walker, Harris, and Siler seek to represent both the 40 Illinois DRS-Accommodation Employees and the 117 Illinois DRS-Disability Employees who did not opt in to the Easterwood Action. (Adams-Gillard, D.E. 70, PAGEID 396-97.)[2]

---

[2] In briefing, Sedgwick states that the 40 DRS-Accommodation Employees performed "accommodation duties," while the 117 DRS-Disability Employees performed "disability duties." (D.E. 70, PAGEID 397.) The Court infers that the 40 DRS-Accommodation Employees specialized in requests for disability accommodations under the ADA. The Court infers that the 117 DRS-Disability Employees specialized in requests for disability benefits.

In the Adams-Gillard Action, Sedgwick employees asserted unpaid overtime claims under Illinois state law and Chicago Municipal Ordinances and Codes. (Adams-Gillard, D.E. 7, PAGEID 30.) The complaint was filed on January 19, 2021. (Adams-Gillard, D.E. 7.) Adams-Gillard, as a Named Plaintiff, seeks to represent a class of Illinois DRS-Disability Employees. (Adams-Gillard, D.E. 7, PAGEID 30.)

Sedgwick moved to dismiss the complaint in the Adams-Gillard Action. (Adams-Gillard, D.E. 27). Sedgwick argued that the claims in the Walker Action and Adams-Gillard Action were "nearly identical" and that the Court should stay or dismiss the Adams-Gillard Action under the first-to-file rule. (Adams-Gillard, D.E. 27-1, PAGEID 123.) Named Plaintiffs responded in opposition. (Adams-Gillard D.E. 35, PAGEID 201.) Sedgwick withdrew its first-to-file argument on June 30, 2021. (Adams-Gillard, D.E. 40.)

On October 22, 2021, Named Plaintiffs advised the Court that the parties to the Adams-Gillard Action had reached a settlement that resolved the state and municipal overtime claims of Illinois DRS-Disability Employees. (Adams-Gillard, D.E. 55.) Sedgwick informed Siler and the court in the Walker Action that it could no longer participate in settlement discussions about Illinois DRS-Disability employees. (Adams-Gillard, D.E. 81, PAGEID 520.) Named Plaintiffs filed a motion

for settlement approval and class certification on December 16, 2021. (Adams-Gillard, D.E. 80.)

## II.  **Jurisdiction**

A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)(1). To determine the amount in controversy, a court "consider[s] the amount alleged in the complaint and do[es] not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011). In any civil action of which a federal district court has original jurisdiction, it may exercise supplemental jurisdiction over other related claims that form part of the same case or controversy, subject to certain limitations. 28 U.S.C. § 1367.

Sedgwick is incorporated and headquartered in Tennessee. (Adams-Gillard, D.E. 7 at ¶ 2.) Adams-Gillard is a citizen of Indiana. (Adams-Gillard, D.E. 7 at ¶ 3.) Sycks is a citizen of Ohio. (Adams-Gillard, D.E. 7 at ¶ 4.) The complaint alleges that the amount in controversy exceeds $75,000. (Adams-Gillard, D.E. 7 at ¶ 3.) There is no legal certainty that prevents each Named Plaintiff from claiming that amount in good faith. The

Court has diversity jurisdiction under 28 U.S.C. § 1332(a). The claims of Named Plaintiffs and putative class members are so related as to form the same case or controversy. To the extent that putative class members do not meet the requirements of 28 U.S.C. § 1331(a), the Court exercises supplemental jurisdiction over their claims under 28 U.S.C. § 1367.

### III. Standard of Review

Under some circumstances, the Court must allow any person to intervene in a case as a matter of right; under others, the Court may allow permissive intervention. Fed. R. Civ. P. 24(a)—(b). "[Rule] 24 distinguishes a permissive intervenor from an intervenor of right by the stake each has in the litigation. The intervenor of right has an interest in the litigation that it cannot fully protect without joining the litigation, while the permissive intervenor does not." Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 381 (1987) (Brennan, J., concurring in part and concurring in the judgment). "Rule 24 should be 'broadly construed in favor of potential intervenors.'" Stupak-Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000) (quoting Purnell v. Akron, 925 F.2d 941, 950 (6th Cir. 1991)). That "does not mean that Rule 24 poses no barrier to intervention at all." Id. "[A] district court is required to accept as true the nonconclusory allegations made in support of an intervention motion." Parkwest Dev., LLC v.

6

Ellahi, 2018 WL 3640433, at *2 (E.D. Mich. Aug. 1, 2018) (citing Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 819 (9th Cir. 2001)).

Mandatory intervention requires putative intervenors to establish: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." Stupak-Thrall, 226 F.3d at 471 (citing Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997), and Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999)). A motion for mandatory intervention must be denied if the proposed intervenor cannot satisfy all of the criteria. United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005) (citing Grubbs v. Norris, 870 F.2d 343, 345 (6th Cir. 1989)).

"To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." Michigan, 424 F.3d at 445 (citing Mich. State AFL-CIO, 103 F.3d at 1248). "Once [the timeliness and common question of law or fact elements] are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's

discretion, intervention should be allowed." Id. (citing Mich. State AFL-CIO, 103 F.3d at 1248). "[T]he decision whether to grant permissive intervention resides largely in the discretion of the district court." Stringfellow, 480 U.S. at 382 n.1.

## IV.  Analysis

### A. Mandatory Intervention

Siler has not established that she is entitled to intervention as of right.

#### 1.   Timeliness of the Intervention

When considering a motion to intervene, "the court where the action is pending must first be satisfied as to timeliness." Nat'l Ass'n for the Advancement of Colored People v. New York, 413 U.S. 345, 365 (1973); see also Blount-Hill v. Zelman, 636 F.3d 278, 284 (6th Cir. 2011); United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 832 (8th Cir. 2010) ("The issue of the timeliness of a motion to intervene is a threshold issue.").

The Sixth Circuit considers five factors when evaluating the timeliness of a motion to intervene:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of

> unusual circumstances militating against or in favor
> of intervention.

Blount-Hill, 636 F.3d at 284 (citing Jansen v. City of Cincinnati, 904 F.2d 335, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" Id. (quoting Stupak-Thrall, 226 F.3d at 472-73).

The Motions to Intervene are timely based on the Blount-Hill factors. Although there is now a settlement and motion for conditional certification before Court, the parties did not conduct significant discovery or motion practice in this suit. See Midwest Realty Mgmt. Co. v. City of Beavercreek, 93 F. App'x 782, 786 (6th Cir. 2004) (finding that courts should evaluate the point to which the suit has progressed based on the extent of discovery and motion practice). The point to which the suit has progressed suggests that intervention is timely.

Siler asks the Court to grant her Motions to Intervene so that she can protect her own interests and the interests of the Walker Action putative class. A settlement in the Adams-Gillard Action might affect the claims asserted in the Walker Action. Siler's intervention serves a legitimate purpose. See Hubbard v. Elec. Arts, Inc., No. 2:09-CV-233, 2011 WL 3469118, at *3

(E.D. Tenn. Aug. 5, 2011) (allowing intervention to protect class interests where named plaintiff sought to limit damages for jurisdictional purpose).

Both the Sixth Circuit and this Court have found that a putative intervenor may not have adequate notice of his interest in a litigation until settlement terms are publicly available. See Midwest, 93 F. App'x at 788 ("The mere pendency of settlement negotiations cannot be deemed to trigger such awareness. Only notice of objectionable terms in a proposed settlement will ordinarily suffice."); O'Bryant v. ABC Phones of N. Carolina, Inc., No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *9 (W.D. Tenn. Dec. 22, 2020)(finding intervention timely where putative intervenor filed motion within weeks of the parties' motion for preliminary settlement approval). Siler filed her Motions to Intervene before the terms of the proposed settlement were publicly available. She raised additional concerns after the Named Plaintiffs provided a proposed settlement with their motion for settlement approval and class certification. (Adams-Gillard, D.E. 85.) Sedgwick and the Named Plaintiffs were not prejudiced by undue delay.

### 2. Applicant's Substantial Legal Interest

Siler has a substantial legal interest in the Adams-Gillard Action. Resolution of the Adams-Gillard Action might affect Siler's claims in the Walker Action.

10

### 3.   Applicant's Ability to Protect Interest

The Named Plaintiffs in the Adams-Gillard Action seek certification of a settlement class under Federal Rule of Procedure 23(b)(3). (Adams-Gillard, D.E. 80, PAGEID 451.) Class actions that proceed under Rule 23(b)(3) must provide class members with an opportunity to opt out. Fed. R. Civ. P. 23(C)(2)(B). Before a court can approve the settlement of a class action, it must hold a hearing to determine whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Class members may raise objections to the settlement before or during the hearing. Fed. R. Civ. P. 23(e)(5).

Siler has opportunities to protect her interests and the interests of the Walker Action putative class. She may opt out of any class certified in the Adams-Gillard Action or may object to settlement terms at a future fairness hearing. Siler has failed to show an impairment of her ability to protect her interests in the absence of intervention. See Doe v. Cin-Lan, Inc., No. 08-CV-12719, 2011 WL 37970, at *2-3 (E.D. Mich. Jan. 5, 2011)(finding no impairment of putative intervenor's ability to protect interest where putative intervenor could opt out of class or raise objections at the fairness hearing); see also Bailey v. White, 320 F. App'x 364, 366 (6th Cir. 2009)(upholding denial of motion to intervene because

11

investigation and evaluation of proposed class settlement could be accomplished through the fairness hearing).

### 4.   Inadequate Representation

"Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit." Michigan, 424 F.3d at 443. Putative intervenors "need show only that there is a potential for inadequate representation." Grutter, 188 F.3d at 400 (emphasis in original). "Nevertheless, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." Michigan, 424 F.3d at 443-44. "An applicant for intervention fails to meet his burden of demonstrating inadequate representation 'when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty.'" Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir. 1987) (quoting Wade v. Goldschmidt, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

Siler and Named Plaintiffs share the same ultimate objective, to maximize recovery for Illinois DRS-Disability Employees. See Glass v. UBS Financial Servs., Inc., No. C-06-4068 MMC, 2007 WL 474936, at *6 (N.D. Cal. Jan. 17, 2007)

("[Putative intervenor] and the named Glass plaintiffs have the same ultimate objective: obtaining compensation for assertedly unpaid overtime . . . ."). The presumption of adequate representation must be overcome. <u>Michigan</u>, 424 F.3d at 443-44.

Siler argues that the settlement is the result of a reverse auction and that there has been collusion between the parties. She says that Named Plaintiffs have agreed to a reduced overtime multiplier and shortened class period. She says that Sedgwick's withdrawal of the first-to-file argument advanced in its motion to dismiss is evidence of collusion. Siler also argues that Adams-Gillard is not an adequate representative. As evidence, Siler points to the fact that Adams-Gillard settled her FLSA claims against Sedgwick in the Easterwood Action and to the fact that Adams-Gillard did not allege that she worked as a DRS employee in the complaint.

Courts require "concrete evidence" before finding inadequate representation based on collusion. <u>Rutter & Wilbanks Corp. v. Shell Oil Co.</u>, 314 F.3d 1180, 1189 (10th Cir. 2002); <u>see</u> <u>Swinton v. SquareTrade, Inc.</u>, 960 F.3d 1001, 1006 (8th Cir. 2020) (pointing to facts in the record permitting an inference of collusion was "insufficient evidence of a reverse auction"); <u>Negrete v. Allianz Life Ins. Co. of North America</u>, 523 F.3d 1091, 1099 (9th Cir. 2008) ("[T]here is no evidence of underhanded activity in this case."); <u>cf.</u> <u>Tech. Training</u>

13

_Assocs., Inc. v. Buccaneers Ltd. P'ship_, 874 F.3d 692, 697 (11th Cir. 2017) (holding that emails showing a "'Machiavellian' plan to undercut [putative intervenors'] negotiating position" was evidence of inadequate representation).

If concrete evidence were not required, all settlements of competing cases would be derailed by accusations of reverse auction. _See_ _Negrete_, 523 F.3d at 1100 (quoting _Rutter_, 314 F.3d at 1189) ("[I]f Negrete's argument were accepted, the 'reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.'").

Siler cites no evidence in the record to support her allegations of collusion. The overtime multiplier and class period incorporated in the proposed settlement reflect a colorable litigation strategy. _See_ _Bradley_, 828 F.2d at 1192 ("A mere disagreement over litigation strategy . . . does not, in and of itself, establish inadequacy of representation.") Sedgwick's decision to withdraw its first-to-file argument is consistent with an attempt to litigate in its home forum.

Siler has not established that Adam-Gillard represents an adverse interest or has failed to fulfill her duty as a Named

Plaintiff. Siler does not explain why release of FLSA claims in the Easterwood Action impedes Adam-Gillard's ability to act as a Named Plaintiff in the present action. The record shows that Adams-Gillard did hold an Illinois DRS position and that her interests are consistent with Siler's interests. (D.E. 82, PAGEID 548; D.E. 80, PAGEID 447-48.)

Siler has not established inadequacy of representation.

### B.   Permissive Intervention

Exercising its discretion, <u>Stringfellow</u>, 480 U.S. at 382 n.1, the Court denies permissive intervention. The Motions to Intervene are timely, and there is at least one common question of law or fact. However, permissive intervention would result in undue delay and prejudice to the parties. <u>See</u> <u>Michigan</u>, 424 F.3d at 445 (citing <u>Mich. State AFL-CIO</u>, 103 F3d at 1248). Allowing intervention at this stage for the purpose of opposing the settlement would delay the outcome of the litigation. Intervention for the purpose of disrupting the settlement is prejudicial to the parties. <u>See</u> <u>Bailey</u>, 320 F. App'x at 366-67. Permissive intervention is denied.

### V.   Conclusion

The Initial Motion to Intervene and the Corrected Motion to Intervene are DENIED.

SO ORDERED this 30th day of March, 2022.

*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE